## No. 123.—A. B. James & Co. v. Absalom Wade.

Where the mail service can not be used as a means of conveying notice, the holder of commercial paper is not excused if he fails to use all other means within his reach of bringing home notice to the party whom he wishes to charge. 20 A. 399.

To hold the indorser on a promise to pay a promissory note after discharge, the holder must show that the promise was made with a full knowledge of his discharge.

APPEAL from the District Court, parish of Winn. Orsborn, J. J. C. Weeks and J. M. B. Tucker, for plaintiffs and appellants. Jack & Pierson, for defendant and appellee.

Howe, J. The defendant is sued as the indorser of a bill of exchange drawn by W. R. Hughes on Moore & Browder, of New Orleans, and by the latter accepted, payable on the fifteenth February, 1863.

On the day of its maturity the bill was protested by a notary in New Orleans, and a notice deposited in the Postoffice in that city addressed to the defendant, at Winnfield, parish of Winn, Louisiana.

The record shows that in February, 1863, all postal and commercial intercourse was suspended between New Orleans and Winnfield. The war was then raging, and the deposit of the notice in the Postoffice in New Orleans had no effect in converting the conditional obligation of the indorser into an absolute liability. 19 A. 43, 63, 64, 72, 90; 20 A. 399.

If the holders of this bill desired to bind the indorser, it was their duty to have given him notice of dishonor within a reasonable time after the close of the war, and the resumption of commercial intercourse. There being no evidence that any notice except the one described above was ever given, the indorser must be held to have been discharged.

It is, however, urged that in 1867 the defendant promised to pay the bill, and that at the time he made such promise he was aware that he had been already discharged by the *laches* of the holders. On this point the only testimony on behalf of plaintiffs is the following statement by one of their witnesses:

"I brought up the original claim or draft due the firm of A. B. James & Co. to this place some time in April, 1867, and presented it to Dr. Wade. The doctor looked at it, and said that the indorsement upon the draft was his signature, and that was another of his misfortunes during the war; that at the time he indorsed it he supposed that this man Hughes would pay it at maturity, but supposed that he had not, and that he would have it to pay. Dr. Wade remarked to witness that he was going to the city in a few days—that he would call on A. B. James & Co. and try and settle it with them there. That the arrangement, he thought, would be made quicker than witness could effect it by bringing suit. Witness agreed to wait on Dr. Wade."

The defendant testified that in this interview he only proposed a compromise, and that when he went to New Orleans he offered to give the plaintiffs, by way of compromise, some land worth about five hundred dollars, which they refused to accept.

It is by no means certain that the promise sought to be established in this case was so explicit and absolute as to satisfy the requirements of the law. 16 La. 315; 2 A. 16.

But if the promise was made by defendant, it does not appear that it was made with a full knowledge of his discharge, and proof of such knowledge is clearly required to enable the plaintiffs to recover.

The language we have quoted does not justify the inference that Dr. Wade knew that the holders had failed to give him legal notice of the dishonor of the bill. It is rather the language of a man who supposed his liability to be clear, and who ruefully predicted that he would be forced to pay.

We conclude that the judgment rendered by the court *a qua* in favor

A. B. James & Co. v. Absalom Wade.

of defendant was not erroneous. 11 L. 17; 13 L. 368; 1 R. 83; 17 L. 386; 7 R. 334.

It is therefore ordered and adjudged that the judgment appealed from be affirmed with costs.